# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUANITA HERNANDEZ,<br><br>    Plaintiff,<br><br>v.<br><br>ANDREW M. SAUL,[1] Commissioner of Social Security,<br><br>    Defendant. | Case No.: 1:18-cv-01507-BAM<br><br>**ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT** |

## INTRODUCTION

Plaintiff Juanita Hernandez ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for disability insurance benefits under Title II of the Social Security Act and supplemental security income under Title XVI of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to Magistrate Judge Barbara A. McAuliffe.[2]

---

[1] Andrew M. Saul is now the Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Andrew M. Saul is substituted for Acting Commissioner Nancy A. Berryhill as the defendant in this suit.
[2] The parties consented to have a United States Magistrate Judge conduct all proceedings in this case, including entry of final judgment, pursuant to 28 U.S.C. § 636(c). (Doc. Nos. 7, 8.)

1

Having considered the briefing and record in this matter, the Court finds the decision of the Administrative Law Judge ("ALJ") to be supported by substantial evidence in the record as a whole and based upon proper legal standards. Accordingly, this Court affirms the agency's determination to deny benefits.

## FACTS AND PRIOR PROCEEDINGS

Plaintiff filed applications for disability insurance benefits and supplemental security income on February 19, 2015. AR 242-49.[3] Plaintiff alleged that she became disabled on January 1, 2011, due severe depression, anxiety, panic attacks and high blood pressure. AR 242, 323. Plaintiff's applications for disability insurance benefits and supplemental security income were denied initially and on reconsideration. AR 134-38, 145-49. Subsequently, Plaintiff requested a hearing before an ALJ. ALJ Shiva Bozarth held a hearing on October 10, 2017, and issued an order denying benefits on January 4, 2018. AR 12-27, 977-1007. Plaintiff sought review of the ALJ's decision, which the Appeals Council denied, making the ALJ's decision the Commissioner's final decision. AR 1-5. This appeal followed.

### Hearing Testimony

The ALJ held a hearing on October 10, 2017, in Fresno, California. Plaintiff appeared with her attorney, Jonathan Pena. Impartial Vocational Expert ("VE") Paul Ramirez also appeared. AR 979.

In response to questioning from the ALJ, Plaintiff testified that she has a high school education. AR 988. She last worked in 2013 as a caregiver through in-home support services for a family friend, who was confined to a hospital bed. Plaintiff cleaned, cooked, and provided medication. AR 985-87. Plaintiff could not remember any work that she did from 2008-2011 or in 2014 and 2015. She did recall working as a restaurant hostess in 2004, 2005, 2006 and 2007. AR 987-88.

When asked about her physical impairments, Plaintiff testified that she has diabetes. With medication, her sugar levels are controlled, and the numbers are better. She takes two pills, Metformin and Oseni, and checks her blood sugar four times a day. She is trying to follow a diabetic diet. AR

---

[3] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

988-89. Plaintiff also testified that she has hypertension. She takes medication for it, but has trouble remembering to take the pills. Her cousin and her dad call her to make sure she takes her medication. AR 989-90.

When asked about her physical activities, Plaintiff reported that she tries to do her own cleaning. She does not have physical problems with sweeping or mopping. She mostly has difficulty concentrating. She can use the microwave to cook her meals, but she does not use the stove because she cannot concentrate. She burned her arm once when grease splattered on her. Although Plaintiff lives alone, her father and her cousin visit her. Her cousin helps with meals and cleaning and her father drives her to doctor's appointments even though she has a driver's license. She has a dog but does not take him for walks. AR 990-93.

Plaintiff expressed to the ALJ that her problems became significant when her mother passed away. Before that, she was able to work. She engages in self-harm behaviors, cutting or burning herself. In 2015, she was put on a psychiatric hold for trying to hurt herself by taking pills. AR 994-95.

In response to questioning by her attorney, Plaintiff testified that her physical problems include asthma, which is triggered by her anxiety and the weather. She uses an inhaler about four times a day. Her anxiety is triggered when she is around a lot of people, which is why she tries not to go anywhere. When she goes to her doctor's appointments, she gets anxious and cannot concentrate. AR 995-96.

Plaintiff also testified that she has trouble with her right arm that started in 2014. She cannot lift heavy items. She can hold a cup, but she cannot hold a half gallon of milk because it is too heavy, and her arm is too weak. She takes pain medication for it, which helps. After taking her medication, she would rate her pain as 5 out of 10. AR 996-98.

When asked about her hospitalizations, Plaintiff testified that she hears voices. The medication from her psychiatrist helped in the beginning, but it is no longer helping. The voices became louder about two months prior to the hearing. Prior to that, she would hear things every night. Some of the voices were command voices telling her to hurt herself. AR 998-99. Plaintiff also has problems sleeping. She averages two to five hours of sleep a night. This causes concentration issues during the day and she sees things, like shadows. She has issues with fatigue and decreased energy, and she cat

naps during the day. AR 999-1000. Plaintiff also reiterated that she has problems being around a lot of people. She may isolate and gets paranoid. She does individual therapy, not group therapy. AR 1000. She does not watch TV and does not read. AR 1001.

Following Plaintiff's testimony, the ALJ elicited testimony from VE Paul Ramirez. The ALJ asked the VE hypothetical questions. For all of the hypotheticals, the ALJ asked the VE to assume an individual with the same age, education and work experience as Plaintiff. For the first hypothetical, the ALJ asked the VE to assume an individual who cannot be exposed to more than concentrated levels of chemicals, dusts or other respiratory irritants, cannot work at unprotected heights or around fast moving machinery, cannot operate a motor vehicle, and is limited to simple and routine tasks, occasional interactions with coworkers, supervisors and the general public. The VE testified that there would be work in the national economy for such an individual, such as laborer of stores, hand packer, and cleaner, housekeeper. AR 1002-03.

For the second hypothetical, the ALJ asked the VE to assume the same individual from hypothetical number one with the additional limitation that the individual would require a reminder once per hour to stay on task. The VE testified that there would be no jobs for such an individual. AR 1003.

For the third hypothetical, the ALJ asked the VE to assume the same individual from hypothetical number one with the additional limitation that this individual would need two unscheduled absences from work per month. The VE testified that there would be no jobs available for such an individual. AR 1003.

Following questioning by the ALJ, Plaintiff's counsel asked the VE to assume a hypothetical individual limited to a range of light work, with the right upper extremity would be limited to occasional overhead reaching and frequent reaching in all other directions, occasional ramps, stairs and stooping, but never ropes, ladders or scaffolds, limited to simple, routine tasks, and would have difficulty relating and interacting with coworkers, supervisors and the general public and would be off tasks 15 percent of the time in those categories. The VE testified that there would be no work for this individual. AR 1004.

For the final hypothetical, the ALJ asked the VE to assume the individual in hypothetical number one with an additional limitation to the light exertional level. The VE testified that there would be jobs available at the light exertional level, such as office helper, cannery worker, and sorter, agricultural. AR 1004-05.

### Medical Record

The relevant medical record was reviewed by the Court, and will be referenced below as necessary to this Court's decision.

### The ALJ's Decision

Using the Social Security Administration's five-step sequential evaluation process, the ALJ determined that Plaintiff was not disabled under the Social Security Act. AR 15-27. Specifically, the ALJ found that Plaintiff had not engaged in any substantial gainful activity since January 1, 2011, her alleged onset date. AR 18. The ALJ identified asthma, obesity, depressive disorder, generalized anxiety disorder, and post-traumatic stress disorder as severe impairments. AR 18-19. The ALJ determined that the severity of Plaintiff's impairments did not meet or equal any of the listed impairments. AR 19. Based on a review of the entire record, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform light work. She could lift and carry 20 pounds occasionally and 10 pounds frequently, stand and/or walk for 6 hours in an 8-hour workday, and sit for 6 hours in an 8-hour workday. She could not be exposed to more than concentrated levels of chemicals, dusts, or other respiratory irritants. She also could not work at unprotected heights, with fast moving machinery, or operate a motor vehicle. She was limited to simple, routine tasks and occasional interaction with coworkers, supervisors, and the general public. AR 20-26. With this RFC, the ALJ found that Plaintiff could perform jobs that exist in significant numbers in the national economy, such as office assistant, cannery worker and sorter agricultural. AR 26-27. The ALJ therefore concluded that Plaintiff was not disabled under the Social Security Act. AR 27.

## SCOPE OF REVIEW

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, this Court must determine whether the decision of the Commissioner is supported by substantial evidence.

42 U.S.C. § 405(g). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985). In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. *E.g., Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's determination that the claimant is not disabled if the Commissioner applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health and Human Servs.*, 812 F.2d 509, 510 (9th Cir. 1987).

## REVIEW

In order to qualify for benefits, a claimant must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). A claimant must show that he or she has a physical or mental impairment of such severity that he or she is not only unable to do his or her previous work, but cannot, considering his or her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

## DISCUSSION[4]

Plaintiff contends that the ALJ erred by (1) failing to incorporate into the RFC the mental limitations identified by the consultative examiner, Dr. Soad Khalifa; (2) improperly discounting the opinion of third-party witness Jael Enos; and (3) improperly evaluating Plaintiff's subjective

---

[4] The parties are advised that this Court has carefully reviewed and considered all of the briefs, including arguments, points and authorities, declarations, and/or exhibits. Any omission of a reference to any specific argument or brief is not to be construed that the Court did not consider the argument or brief.

complaints regarding her mental impairments and the impact of Plaintiff's right ankle impairment on her RFC.

### A. The ALJ Did Not Err in Determining Plaintiff's Mental RFC

Plaintiff first argues that the ALJ erred by assigning great weight to the opinion of the consultative psychiatric examiner, Dr. Soad Khalifa, but failing to incorporate all of the limitations identified by Dr. Khalifa into Plaintiff's mental RFC.

On May 9, 2015, Dr. Khalifa completed a consultative psychiatric evaluation. Plaintiff complained of depression, anxiety, low motivation, isolative behavior, excessive sleeping and anger issues. She also described limited social activities. AR 391-92. She was able to take care of her personal hygiene. With regard to her daily activities, Plaintiff reported that she sits at home, sleeps and sometimes watches television. AR 392.

On mental status examination, Plaintiff was cooperative with good eye contact, alert and oriented in all spheres. Dr. Khalifa determined that it "was clear … that she was exaggerating her symptoms" and "that with memory testing she was pretending that she could not remember and gave approximate answers." AR 393. As to her cognitive skills, her attention and concentration were impaired, and she had difficulty spelling her last name backward. Her memory also was impaired, but Dr. Khalifa observed that Plaintiff was exaggerating and "it seemed that she was pretending that she does not remember." AR 393. Her judgment and insight were good, but her abstract thinking and fund of knowledge were poor. AR 393. Dr. Khalifa diagnosed Plaintiff with persistent depressive disorder, along with hypertension, back pain and arm pain. Dr. Khalifa opined that "[a]ccording to the claimant, she is unable to maintain attention and concentration to carry out simple job instructions." AR 393. She would have difficulty relating and interaction with coworkers, supervisors and the general public because of her anger issues and poor social skills, depression and anxiety symptoms. She was unable to carry out an extensive variety of technical and/or complex instructions. She also had some restrictions on her activities, based on statements that she had back pain and arm pain, and low motivation, not performing any chores or activities. Dr. Khalifa further opined that because Plaintiff was unable to do math, she should not be handling her own funds. AR 393-94.

///

In evaluating Dr. Khalifa's opinion, the ALJ reasoned as follows:

> As for the opinion evidence, Consultative examiner, Dr. Khalifa, opined the claimant was unable to maintain attention and concentration to carry out simple job instructions, and would have difficulty relating and interacting with coworkers, supervisors and the general public. She was unable to carry out an extensive variety of technical and/or complex instructions (Exhibit B4F, pp. 5-6). I give great weight to Dr. Khalifa's opinion because it is consistent with and supported by the record. The claimant testified that she had great difficulty concentrating (Hearing Transcript), it took her nearly two days to complete her Adult Function Report (Exhibit B5E), and she needed reminders to take her medication (Hearing Transcript). The claimant was diagnosed with anxiety (Exhibit 6BF, p. 43), isolated herself to her apartment (Exhibit B4F, p. 3), and got paranoid and anxious around people (Hearing Transcript). Accordingly, I give great weight to this opinion.

AR 24.

Plaintiff argues that the ALJ erred by assigning "great weight" to Dr. Khalifa's opinion, but omitting from the RFC, without comment, Dr. Khalifa's assessment that Plaintiff was unable to maintain concentration and attention to carry out simple instructions.

An RFC "is the most [one] can still do despite [his or her] limitations" and it is "based on all the relevant evidence in [one's] case record," rather than a single medical opinion or piece of evidence. 20 C.F.R. § 404.1545(a)(1). While it is true that an ALJ is "not qualified to interpret raw medical data in functional terms," *Padilla v. Astrue*, 541 F.Supp.2d 1102, 1106 (C.D. Cal. 2008), the ALJ is not precluded from making an RFC finding that differs from assessments contained in medical source statements. Indeed, "the RFC need not precisely reflect a physician's specific assessments." *Holcomb v. Comm'r Soc. Sec.*, No. 2:17-cv-02268-KJM-CKD, 2019 WL 4745268, at *2 (E.D. Cal. Sept. 30, 2019) (citing *Turner v. Comm'r Soc. Sec. Admin.*, 613 F.3d 1217, 1222-23 (9th Cir. 2010)). As the Ninth Circuit has expressed, "[i]t is clear that it is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity." *Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001).

A review of the record indicates no apparent conflict between Dr. Khalifa's opinion and the RFC limitation to simple, routine tasks. In relevant part, Dr. Khalifa's report states, "*According to the claimant*, she is unable to maintain attention and concentration to carry out simple job instructions." AR 393 (emphasis added). The inability to carry out simple job instructions was therefore Plaintiff's

own opinion of her functioning. In contrast, Dr. Khalifa opined that Plaintiff "would have difficulty relating and interacting with coworkers, supervisors and the general public because of her anger issues and poor social skills, depression and anxiety symptoms" and was "unable to carry out an extensive variety of technical and/or complex instructions because of [these] reasons." AR 393-94. Dr. Khalifa's opinion that Plaintiff was unable to carry out an extensive variety of technical or complex instructions is not inconsistent with Plaintiff's RFC for simple, routine tasks.

Moreover, the ALJ's RFC determination at step-four that Plaintiff could perform simple, routine tasks was supported by the opinions of the state agency consultants and the consultative examiner, Dr. Robin Rhodes Campbell. The state agency physicians, Drs. R. Warren and D. Funkenstein both determined that Plaintiff was not significantly limited in the ability to carry out very short and simple instructions. AR 74, 109. They also concluded that she had the ability to understand and remember simple instructions and had the ability to attend and concentrate for periods of two hours as required in the workplace. AR 75, 110. Similarly, on December 3, 2016, following a consultative evaluation on December 3, 2016, Dr. Robin Rhodes Campbell opined that Plaintiff would have "no impairment in understanding, remembering, and carrying out short, simple instructions." AR 402. The ALJ gave "partial weight" to these opinions, explaining that she assigned "great weight to the limitations regarding simple instructions …, but less weight to the remainder of the opinions, because they are not supported by the record." AR 25. The opinions of non-treating or non-examining physicians may serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record. *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002). Here, the opinions of the state agency physicians and Dr. Campbell were consistent with the independent clinical findings on examination that Plaintiff had no deficits in attention, her concentration was adequate for conversation and time-limited assessment tasks, she was alert and oriented to person, place, time and situation, presented with no obvious cognitive delays, and her insight and judgment were reasonable. AR 400.

The Court therefore finds that the ALJ did not err in establishing Plaintiff's mental RFC and limiting her to simple, routine tasks.

///

**B.     The ALJ Did Not Err in Evaluating the Third-Party Testimony of Jael Enos**

Plaintiff next argues that the ALJ improperly rejected the third-party testimony of her friend, Jael Enos. Ms. Enos completed a Third-Party Function report on March 16, 2015. She reported that she sees Plaintiff daily and helps with activities, such as washing her hair, cleaning, and doctor's visits. She also reported that Plaintiff needs reminders to take medications. She rarely goes outside and does not drive because she becomes overly anxious. She cannot pay her bills, count change, handle a savings account or use a checkbook/money orders. Her impairments affect her ability to lift, squat, bend, stand, reach, walk, sit, kneel, climb stairs and see. They also affect her memory, understanding, task completion, concentration, following instructions, using hands, and getting along with others. AR 279-87. The ALJ assigned "some weight" to Ms. Enos' statements because her personal relationship with Plaintiff prevented her from being considered a "disinterested third party witness," she was not medically trained to make exacting observations regarding Plaintiff's impairments, and the statements did not evidence greater limitations than those indicated by the ALJ. AR 26.

An ALJ must take into account competent lay witness testimony. *Molina v. Astrue*, 674 F.3d 1104, 1114 (9th Cir. 2012); *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001). "[I]n order to discount competent lay witness testimony, the ALJ 'must give reasons that are germane to each witness.'" *Molina*, 674 F.3d at 1114 (citation omitted). An ALJ is not required to discuss every witness' testimony on an individualized, witness-by-witness basis. *Id*. Rather, "if the ALJ gives germane reasons for rejecting testimony by one witness, the ALJ need only point to those reasons when rejecting similar testimony by a different witness." *Id*.

Plaintiff's personal relationship with Ms. Enos is not a valid reason to discount her observations. *Diedrich v. Berryhill*, 874 F.3d 634, 640 (9th Cir. 2017); *see also Smolen v. Chater*, 80 F.3d 1273, 1289 (9th Cir. 1996) (finding that "[t]he fact that a lay witness is a family member cannot be a ground for rejecting his or her testimony. To the contrary, testimony from lay witnesses who see the claimant every day is of particular value."). Further, Ms. Enos' lack of medical training is not a valid reason to discount her testimony. Lay witnesses are not required to have medical training and their testimony need not be backed by any particular expertise. *Molina*, 674 F.3d at 1114 ("Lay

testimony as to a claimant's symptoms or how an impairment affects the claimant's ability to work is competent evidence that the ALJ must take into account."). Nevertheless, because the third-party statement of Ms. Enos was of the same general nature as Plaintiff's subjective complaints, the ALJ's valid reasons for discounting Plaintiff's statements, discussed in detail below, apply equally to Ms. Enos' similar statements. *Molina*, 674 F.3d at 1122 ("given that the lay witness testimony described the same limitations as Molina's own testimony, ... the ALJ's reasons for rejecting Molina's testimony apply with equal force to the lay testimony"); *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009) ("In light of our conclusion that the ALJ provided clear and convincing reasons for rejecting [claimant's] own subjective complaints, and because [layperson's] testimony was similar to such complaints, it follows that the ALJ also gave germane reasons for rejecting her testimony."). Accordingly, the Court finds that the ALJ did not commit reversible error in her evaluation of the lay witness testimony.

### C. The ALJ Did Not Err in Evaluating Plaintiff's Subjective Complaints

Plaintiff next argues that the ALJ "failed to set forth any reason for discounting Plaintiff's alleged mental and physical limitations." (Doc. No. 16 at 15.)

In deciding whether to admit a claimant's subjective complaints, the ALJ must engage in a two-step analysis. *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1196 (9th Cir. 2004). First, the claimant must produce objective medical evidence of her impairment that could reasonably be expected to produce some degree of the symptom or pain alleged. *Garrison*, 759 F.3d at 1014. If the claimant satisfies the first step and there is no evidence of malingering, the ALJ may reject the claimant's testimony regarding the severity of her symptoms only by offering specific, clear and convincing reasons for doing so. *Id.* at 1015.

Here, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms regarding her mental impairments, but rejected her statements concerning the intensity, persistence and limiting effects of those symptoms. AR 22. Although there was evidence suggestive of malingering relative to her mental impairments, which is discussed below, the ALJ nonetheless provided specific, clear and convincing reasons for discounting Plaintiff's testimony.

11

First, the ALJ discounted Plaintiff's statements based on the objective medical evidence. AR 22. Although lack of supporting medical evidence cannot form the sole basis for discounting testimony, it is a factor that the ALJ can consider. *See Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005). The ALJ summarized the medical record relative to Plaintiff's mental impairments and highlighted evidence demonstrating that Plaintiff exaggerated her symptoms. AR 24. Specifically, the ALJ cited Dr. Khalifa's findings on mental status examination that Plaintiff "exaggerated her symptoms." AR 24. Indeed, Dr. Khalifa repeatedly noted in the evaluation report that Plaintiff was exaggerating. AR 393 ("I noticed that she was exaggerating her symptoms."), ("It was clear to me that she was exaggerating her symptoms."), ("she was exaggerating"). Additionally, during testing, Dr. Khalifa found that not only was Plaintiff exaggerating, but she also was pretending that she could not remember. AR 393 ("I saw that with memory testing she was pretending that she could not remember and she gave approximate answers."), ("it seemed that she was pretending that she does not remember"). The ALJ also identified Dr. Campbell's report indicating that Plaintiff's test results were invalid. AR 24. In her report, Dr. Campbell commented that Dr. Khalifa's evaluation showed "some evidence of exaggeration and malingering." AR 398. On mental status examination, Dr. Campbell also found "evidence of exaggeration and dissimulation." AR 399. As to Plaintiff's cognitive testing, Dr. Campbell advised caution, stating as follows:

> These test results should be interpreted very cautiously given the claimant's effort, which was poor. When presented with any type of memory task, she said without hesitation that she would be unable to do them. Her answers were approximate. She presented herself as being unable to tell the difference between shapes or colors. She presented herself as being unable to add single digit numbers. It is unlikely that the claimant has deficits as severe as these test scores would suggest.

AR 400. Plaintiff's tests results indicated that she was functioning intellectually in the "Extremely Low range" and she scored "very poorly" on the measure of memory. AR 401. Dr. Campbell opined that these results were not likely to be an accurate estimation of Plaintiff's overall functioning because they were "not consistent with her history nor her current level of functioning." AR 401. Dr. Campbell concluded that the test results were "considered to be invalid." AR 401. The objective findings of Drs. Khalifa and Campbell that Plaintiff exaggerated her symptoms, pretended not to remember during memory testing, and exhibited poor effort on testing are a sufficient basis for

discounting Plaintiff's testimony regarding her functional limitations. The ALJ could reasonably conclude that Plaintiff's limitations were not as extensive as alleged.

Second, the ALJ discounted Plaintiff's testimony regarding her mental limitations based on evidence that her condition improved with treatment and she was stable on her medications. AR 23. Impairments that can be effectively controlled with medication are not disabling for purposes of determining eligibility for disability benefits. *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) (citations omitted); *see also Petersen v. Berryhill*, 737 Fed. App'x 329, 332 (9th Cir. June 19, 2018) (citing *Warre* and finding ALJ properly relied on evidence that the claimant's pain and symptoms were controlled with medication and treatment). The ALJ found that Plaintiff's mental status improved, and by June 2017, she denied suicidal ideation, she was exercising, and her mood had improved. AR 23. The ALJ also noted that Plaintiff's medications helped stabilize her. AR 23, 25. According to treatment records, in June 2017, Plaintiff was continuing with exercise, noted to be improved with medications, denied suicidal ideations and her medications were stable. AR 406-07.

With regard to her physical impairments, Plaintiff asserts that the ALJ "wholly failed to evaluate the limitations resulting from her right ankle cyst" and failed to offer clear and convincing reasons for rejecting her subjective complaints resulting from this impairment. (Doc. 15 at 15, 17). However, Plaintiff has waived the issue of her ankle cyst as a disabling impairment by raising it for the first time before this Court. *See Harshaw v. Colvin*, 616 Fed.App'x 316 (9th Cir. 2015). Although the medical records include some evidence regarding this condition, such evidence is not sufficient to have put the ALJ and the Appeals Council on notice that Plaintiff specifically claimed that she was impaired by this condition. *Id.* The Ninth Circuit has held that "at least when claimants are represented by counsel, they must raise all issues and evidence at their administrative hearings in order to preserve them on appeal." *Meanel v. Apfel*, 172 F.3d 1111, 1115 (9th Cir. 1999).

Here, Plaintiff did not allege that she was impaired by her ankle cyst and she identified no limitations associated with her ankle during the administrative proceedings despite being represented by counsel. In applying for disability, Plaintiff claimed she was disabled from severe depression, anxiety, panic attacks and high blood pressure. AR 323. Her Adult Function Report identified only depression, anxiety, arthritis in her legs, back pain, high blood pressure and trouble with her bladder.

AR 289.  A hearing brief prepared by Plaintiff's counsel on September 20, 2017, which was submitted to the ALJ, alleged that Plaintiff suffered from the following severe impairments:  depression, posttraumatic stress disorder, diabetes, asthma and chronic pain syndrome.  AR 352.  The briefing made no mention of Plaintiff's ankle cyst or any associated limitations.  AR 352-54.  At the hearing, neither Plaintiff nor her counsel mentioned her ankle cyst or any associated limitations.

Even if not waived, the ALJ has implicitly rejected Plaintiff's allegations of disabling limitations from her ankle cyst.  Plaintiff claims that she complained of pain with weight bearing, tenderness, and pain with motion of the ankle from March 2015 through June 2017.  (Doc. No. 15 at 16.)  As demonstrated by the ALJ's decision, Plaintiff's allegations regarding her physical limitations, including an inability to walk, were discounted as inconsistent with her activities.  AR 22, 23.  An ALJ can properly discount a claimant's subjective complaints when the daily activities demonstrate an inconsistency between what the claimant can do and the degree that disability is alleged.  *Molina*, 674 F.3d at 1112–1113.  Here, the ALJ considered that Plaintiff was able to exercise.  AR 23.  This consideration included Plaintiff's own report in May 2017 that she was exercising and had lost 15 pounds.  AR 22, 402.  From this record, it was not unreasonable to conclude that Plaintiff's ability to exercise undermined her claims of pain with walking or weight-bearing.

Further, the ALJ considered the objective evidence as undermining her claims regarding an inability to walk and postural limitations.  AR 23.  The objective evidence may be considered when evaluating a claimant's subjective complaints.  *See Burch*, 400 F.3d at 681.  In this case, the ALJ expressly considered record evidence that Plaintiff's lower extremities demonstrated normal ranges of motion and her gait was within normal limits.  AR 23.  According to the record, on examination in 2015, Plaintiff's ankle range of motion was within normal limits on both the right and left and her gait was normal despite Plaintiff's claim that she could not walk at all because of pain.  AR 387.  This evidence also undermines any allegations concerning ankle range of motion and weight bearing difficulties.

For these reasons, the Court finds that the ALJ's assessment of Plaintiff's subjective complaints is free of reversible error.  Even if one of the reasons provided could be found inadequate, there are sufficient other reasons provided to support the assessment of Plaintiff's subjective

14

complaints. *See Batson*, 359 F.3d at 1197; *Molina*, 674 F.3d at 1115. Moreover, even if the ALJ explained her reasoning with "less than ideal clarity," the Court must uphold it where the ALJ's "path may reasonably be discerned." *Molina*, 674 F.3d at 1121.

## **CONCLUSION**

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, this Court **DENIES** Plaintiff's appeal from the administrative decision of the Commissioner of Social Security. The Clerk of this Court is **DIRECTED** to enter judgment in favor of Defendant Andrew M. Saul, Commissioner of Social Security, and against Plaintiff Juanita Hernandez.

IT IS SO ORDERED.

Dated: **March 24, 2020**  /s/ *Barbara A. McAuliffe*
UNITED STATES MAGISTRATE JUDGE